John R. PATTERSON, et al., Plaintiffs,

v.

NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.

In the Matter of the Application of Robert BROVICH, Former Regular Situation Holder and General Foreman at IL Progresso, to Transfer to Another Company, Pursuant to the Terms of the Settlement Agreement, U.S.D.C., S.D. N.Y., 73 Civ. 3058 (WCC) and 73 Civ. 4278 (WCC).

Nos. 73 Civ. 3058, 73 Civ. 4278 (WCC). Claim No. 245.

United States District Court, S.D. New York.

July 25, 1990.

Thomas W. Gleason, New York City (Harvey S. Mars, of counsel), for Newspaper and Mail Deliverers' Union and Robert Brovich.

Seyfarth, Shaw, Fairweather & Geraldson, New York City (Jedd Mendelson, of counsel), for The New York Times.

William S. Ellis, Interim Admin., New York City.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

On September 19, 1974, the Court issued an opinion and order approving the settlement of this case and incorporating the settlement agreement (the "Agreement") in a consent decree, familiarity with which is presumed. *See Patterson v. Newspaper & Mail Deliverers' Union*, 384 F.Supp. 585 (S.D.N.Y.1974), *aff'd*, 514 F.2d 767 (2d Cir. 1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). In the claim now before the Court, Robert Brovich appeals a decision by Administrator William S. Ellis, Esq. (the "Administrator") arising under the Agreement. The New York Times ("Times") supports the Administrator's determination. For the following reasons, I uphold the Administrator's determination.

## BACKGROUND

Robert Brovich was employed by Il Progresso Publishing Co. ("Il Progresso") between 1963 and 1988. Brovich served Il Progresso as a regular situation holder for 25 years and as their general foreman for 23 years for the publication "Il Progresso Italo–Americano." On June 30, 1988, Brovich's position with Il Progresso was terminated because it had decided to cease publication of "Il Progresso Italo–Americano." The Newspaper and Mail Delivers' Union ("NMDU") filed unfair labor charges against Il Progresso with the National Labor Relations Board. These charges were subsequently dismissed.

In early July 1988, NMDU Business Agent Seymour Goldstein met with the NMDU employees discharged from Il Progresso to ascertain whether they wished the NMDU's assistance in transferring to another employer. Brovich indicated that he wished to obtain employment with the Times. Later that month, Goldstein conferred with Stanley Schwartz, Esq., director of labor relations at the Times, regarding Brovich's employment. Goldstein and Schwartz agreed to place Brovich at the bottom of the Times Group I list. In July 1988, Brovich began shaping off the bottom of the Times Group I list. On November 3, 1988, Goldstein sent a letter to the Administrator requesting that he reserve a position for Brovich on the Times Group I list.

On November 30, 1988, this Court entered an Order ("November 30, 1988 Order") providing for the creation of an "Interim Group I List" at the Times. Pursuant to this Order, Times Interim Group I shapers were to be hired after the "official" Times Group I shapers had obtained employment.

The Adjustment Board, at its February 1989 meeting, formally approved Brovich's transfer to the top of the Times Group I list. Brovich continued to shape off the Group I list until March 20, 1989, when he was made a regular situation holder by the Times and placed on the Time's regular situation holder list.

After learning that Brovich had become a regular situation holder, the Administrator directed that Brovich be removed from the Times regular situation list and placed behind the Interim Group I list pending a hearing before himself. The hearing, attended by Brovich, Goldstein and the NMDU's prior counsel, was held on April 6, 1989.

In a written decision dated April 24, 1989, the Administrator approved Brovich's application to transfer to the Times Group I list under paragraph 18 of the Agreement and matched him with a minority employee. The Administrator further determined to place Brovich behind the Times Interim Group I list. Brovich was therefore removed from the regular situation list and placed on the bottom of the Interim Group I list.

On February 27, 1990, the Administrator rendered a decision in Claim 186, which had been pending since August 1985. Shortly thereafter, by virtue of this Court's order, a revised Interim Group I list was substituted for the 1988 Interim Group I list. Brovich was listed as number 101 out of the 105 places on the revised Interim Group I list. Brovich now requests placement on the regular situation holder list and retroactive credit for time spent shaping off the bottom of the Times Group I list.

## DISCUSSION

### Standard of Review

The Agreement provides the Administrator with broad authority to take all actions he deems necessary to implement the provisions and to ensure the performance of the Order. It further provides that the Administrator shall hear and determine a wide variety of claims arising under the Agreement, which may then be brought before the Court for review. Agreement ¶ 4.

In *Foreman v. Wood, Wire & Metal Lathers Intl. Union Local No. 46*, 557 F.2d 988, 992 (2d Cir.1977), the Second Circuit Court noted that the scope of review of an independent administrator appointed to ensure compliance with a settlement decree was similar to that applied to an arbitrator's decision. More recently in *United States v. International Bhd. of Teamsters*, 905 F.2d 610 (2d Cir.1990), the Second Circuit Court reiterated that an administrator's decision is "entitled to great deference." Thus, it is clear that an administrator's decision cannot be rejected merely because a court may be inclined to reach a different result.

### Administrator's Decision

Brovich does not contest his transfer to the Group I list pursuant to paragraph 18(a) which provides:

[I]ndividuals who are employed by a defendant employer may ... be added to any other defendant employer's Group I list only if (a) they have lost their regular situation elsewhere in the industry by reason of lay-off for economic or business reasons or through merger, consolidation or permanent suspension of the newspaper or company at which they were employed, (b) the Administrator has certified that such layoff or merger, consolidation or permanent suspension is legitimate *and* (c) the Administrator has determined that such additions to said Group I list will not significantly affect or delay achieving the Goal or significantly affect or delay any other provisions of the Order designed to maximize employment opportunities for minorities ...

Brovich contends, however, that the Administrator's decision to place him behind the Interim Group I list instead of at the bottom of the Group I list was (1) unfair in treating Brovich as if he had transferred after the November 30, 1988 Order, (2) in violation of paragraph 18(b) of the consent decree and (3) inconsistent with prior decisions of this Court.

Brovich first contends that the Administrator acted unfairly in failing to conduct a hearing permitting Brovich's transfer before the entry of this Court's November 30, 1988 Order. Brovich argues that any difference in treatment as a result of this Court's November 30, 1988 Order is incorrect because Brovich was transferred more than four months before November 30, 1988, the date of this Court's order which implemented the Interim Group I list. This argument is misleading, however, as it assumes that the method of Brovich's original transfer to the Times Group I list was correct. The Administrator correctly asserts that the Times and NMDU wrongfully transferred Brovich to the Times Group I list because such transfers are appropriate only after a hearing before the Admin-

istrator to determine if such transfer was warranted pursuant to paragraph 18.[1] Rather than being placed on the Group I list by the Times and the NMDU prior to a hearing before the Administrator, Brovich should have worked off the Group II list, pending an application to transfer and a hearing before the Administrator.

Never having been confronted with a situation in which a regular situation holder was transferred to another employer's Group I list before a hearing and decision by the Administrator, the Administrator interpreted Goldstein's November 3, 1988 letter as indicating the NMDU's intent to seek a hearing before the Administrator. Upon learning, in February 1989, that Brovich had been placed on the Times Group I list and subsequently moved to the regular situation list, the Administrator directed that such a hearing take place. Thus, the NMDU and the Times bear responsibility for the false expectation given Brovich that he would be allowed to retain his position as a regular situation holder.

Brovich further contends that the Administrator's decision to place him behind the Interim Group I list was in violation of Paragraph 18(b), which provides:

> The administrator shall also be authorized and empowered to reassign any regular situation holders who may be laid off for economic or business reasons to the top of the Group I list at the defendant employer by which they were so laid off. *If the Administrator determines there is insufficient work available for such persons at said employer, such persons, except as otherwise provided herein, may thereafter be added to the bottom of a Group I list at any other defendant employer in the industry they may choose* ... (emphasis added)

Brovich reads this language as mandating that the Administrator place any transferee at the bottom of the Group I list. However, the paragraph specifically provides that the Administrator "may" place such employees at the bottom of a Group I list; it does not mandate that the Administrator do so. In contrast, paragraph 18 elsewhere imposes non-discretionary duties on the Administrator. For example, if a defendant employer intends to reduce its work force in a way which would have a consequent effect on the work opportunities of its employees other than its regular situation holders, the Administrator "shall review the effect of the lay-off on work opportunities for employees other than regular situation holders ..." Thus, whether the Administrator abused his discretion in not placing Brovich at the bottom of the Group I list depends on the particular factual circumstances as they existed at the time of the Administrator's decision.

Brovich argues that his placement on the revised Interim Group I list is contrary to the Decree's specific intent to ensure the mobility and job security of displaced regular situation holders. In *Patterson v. Newspaper & Mail Delivers' Union*, 50 Empl.Prac.Dec. (CCH) ¶ 39,193, 1989 WL 74408 (S.D.N.Y.1989), this Court stated "paragraph 18(a) was designed to ensure the mobility of regular situation holders who were terminated, without stripping them of the seniority they had attained after years of work." Brovich argues that this Court's approval in the above-cited case of the Administrator's April 7, 1988 decision to transfer thirteen laid-off workers from the NMDU's Group II list to the Group I list of several companies, including the Times, set a precedent which this Court is obliged to follow. Brovich also argues that the Administrator's decision in the instant action is inconsistent with his decision in that action, because he did not place those workers behind the Interim I list.

Unlike the above-cited case, however, the November 30, 1988 Order was outstanding at the time the Administrator made his decision. In the November 30, 1988 Order, this Court lifted the automatic stay provision imposed by paragraph 4 of the Agreement with respect to the Administrator's decision, in Claim 229, to create an Interim Group I list at the Times. In Claim 229,

---

1. Clauses (b) and (c) of paragraph 18(a) make clear that the Administrator must determine that certain conditions are met before the transfer can take place.

the Administrator stated that the Interim Group I list was intended to counteract the effect on the Times Group III members caused by the delay resulting from the hearings in Claim 186, which stemmed from a Times Group III list created in 1985.[2] The Times' lists had been frozen pending the outcome of Claim 186. The Administrator also stated that abuse of the Group II list by NMDU members connected to shops other than the Times was one of the principal factors for creation of the Interim Group I list. Although the Administrator contends that these moves to the Group I list were to take place regardless of the outcome of Claim 186, this Court declined to issue union cards to the Interim Group I list employees pending the resolution of Claim 186. The Administrator therefore continued to freeze the seniority lists to prevent individuals transferring to the Times to move ahead of the Interim Group I list.

In determining that Brovich should be placed behind the Interim Group I list, the Administrator stated, "I am of the opinion that it is the Interim Group I list which has the better side of the argument concerning fairness. Claim No. 186 has been pending since August, 1985. It is now almost four years that this claim has been pending. Until that claim is resolved, I am of the opinion that applicants from other companies to the Times should go behind the Interim I list." Although the Administrator decided to match Brovich with a minority employee since his position with Il Progresso was terminated prior to the November 30, 1988 Order, his decision to treat Brovich as if his transfer had been effected after November 30, 1988 for the purpose of placement on the Time's lists was not arbitrary under the circumstances.[3] This Court agrees that the decision to place Brovich behind the Interim Group I list was a valid exercise of the Administrator's discretion in balancing the interests of Brovich and the interests of the members of the Interim Group I list.[4]

## CONCLUSION

For the above-stated reasons, the Administrator's determination dated April 24, 1989 is affirmed in its entirety.

SO ORDERED.

---

**2.** The Administrator issued his decision in Claim 186 on February 27 1990, and the parties are currently preparing their briefs for appeal.

**3.** The Court does not agree with the NMDU's position that an employee's date of transfer to another company establishes an arbitrary criterion for determining placement of that employee on the new employer's lists.

**4.** This Court notes that the Times, although it apparently allowed Brovich to be improperly placed on the Group I list, now believes that the Administrator's determination produced a sensible outcome under all the circumstances. Letter from Jedd Mendelson, an attorney for the Times, July 3, 1990 at 3.